UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

EUGENE BOWERS, )
)
Petitioner, )
)
v. ) No. 1:18-cv-00271-JMS-TAB
)
WARDEN, )
)
Respondent. )

**Entry Discussing Evidentiary Hearing,
Denying Petition for Writ of Habeas Corpus,
and Directing Entry of Final Judgment**

The petition of Eugene Bowers for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. WVD 16-01-0085.[1] For the reasons explained in this Entry, Mr. Bowers's habeas petition must be **denied**.

**I. Findings of Fact**

**A. Procedural History**

The disciplinary action that underlies Mr. Bowers's habeas petition began with a January 16, 2016 Conduct Report, in which Sgt. Lantrip charged Mr. Bowers with threatening – B213. The Conduct Report states:

> On 1/16/2016 at approx. 0615 I Sgt. S. Lantrip was feeding cell 212 where Offender Bowers, Eugene #882244 1S on Icrash.[2] When I opened up the cuffport Offender

---

[1] Mr. Bowers currently has two petitions for writ of habeas corpus pending before this Court challenging disciplinary proceedings at Wabash Valley Correctional Facility (Wabash Valley). WVD 16-01-0084 is pending in *Bowers v. Warden*, 1:17-cv-1695-JMS-TAB. The disciplinary proceeding that underlies this action – WVD 16-01-0085 – was original pending in *Bowers v. Warden*, 1:17-cv-17-1695-JMS-TAB, but is now pending in this action after it was severed on January 20, 2018.

[2] According to the respondent's return, Icrash stands for Cell Administrative Restrictive Status Housing. Dkt. 3, p. 3.

1

> Bowers leaned down to the cuffport and stated "you have to open my door sometime and when you do I will kill you!"

Dkt. 3-8.

Mr. Bowers previously filed a petition for writ of habeas corpus in *Bowers v. Brown*, 2:16-cv-152-JMS-MJD, challenging the disciplinary proceedings in WVD 16-01-0085. In that petition, Mr. Bowers stated that he did not receive written notice of the charges at least twenty-four hours before the disciplinary hearing. The respondent filed a return arguing that Mr. Bowers received all the due process he was due and introduced a Screening Report dated January 21, 2016, which stated that Mr. Bowers was notified of the threatening charge but refused screening.

Because the above evidence left the Court with two mutually exclusive versions of events, the Court issued an Entry Discussing the Need for Evidentiary Hearing or Vacation of Disciplinary Sanctions. *Id.*, dkt. 17. The respondent chose to vacate the disciplinary sanctions and notified Mr. Bowers of this decision on March 6, 2017. *Id.*, dkt. 18-1. The Court dismissed the petition as moot on March 8, 2017, after the respondent filed a motion to dismiss. *Id.*, dkt. 19. After the Court's dismissal of Mr. Bowers's initial petition, the Indiana Department of Corrections ("IDOC") began disciplinary proceedings related to WVD 16-01-0085 anew, which are outlined below.

**B. The Disciplinary Proceeding**

In March 2017, Officer Shaye Byers was the conduct adjustment board screening officer at New Castle Correctional Facility (New Castle).[3] As screening officer, Officer Byers reviews the conduct reports with the offenders, explains the charges, notifies the offenders of their rights, determines whether the offenders want to call any witnesses or present any evidence, obtains their

---

[3] The incidents that give rise to the conduct report occurred at Wabash Valley. Mr. Bowers was transferred to New Castle on February 15, 2016.

pleas, and notifies offenders of the date of the disciplinary hearing.[4] The IDOC has a screening checklist that the screening officer uses during screening. Ex. 1, p. 6.[5] The purpose of the checklist is to ensure that the screening officer follows the screening guidelines. When screening is completed, the screening officer gives the checklist to the hearing officer.

On March 8, 2017, Sgt. Logan escorted Mr. Bowers into a conference room at New Castle. Officer Byers was in the room when Mr. Bowers arrived.[6] Mr. Bowers sat down, and Officer Byers immediately notified him of the order issued on March 6, 2017 by J. Lyttle vacating the sanctions imposed in WVD 16-01-0085 and setting the matter for a rehearing. Ex. 1, p. 9; *Bowers v. Brown*, 2:16-cv-152-JMS-MJD, dkt. 18-1. Although Mr. Bowers had previously read the letter from Lyttle, he stated he was not going to sign the document and directed Officer Byers's attention to the entry issued by this Court that dismissed the first disciplinary proceedings as moot when the IDOC vacated the sanctions. Mr. Bowers's protests establish that he was clearly aware that the report presented by Officer Byers was related to the disciplinary sanctions raised in the previously dismissed lawsuit. Officer Byers then read each conduct report to Mr. Bowers.

However, at some point in the screening process, Mr. Bowers stopped Officer Byers and she suspended the screening because in her view, Mr. Bowers was refusing to cooperate. Officer Byers wrote on each conduct report that Mr. Bowers refused screening. Ex. 1, p. 2. Officer Byers also wrote on the screening report that Mr. Bowers refused screening. Ex. 1, p. 3. Sgt. Logan also

---

[4] This process is commonly referred to as screening.

[5] Exhibit 1 was introduced by the respondent at the evidentiary hearing without objection.

[6] Mr. Bowers and Officer Byers both state that Sgt. Logan remained in the conference room but Sgt. Logan states he escorted Mr. Bowers to the room and stood outside. Sgt. Logan does not have a good memory of this event. However, Sgt. Logan assumed that Mr. Bowers refused screening because he left the conference room before being instructed to do so by staff.

signed next to where Officer Byers wrote "refused," although he did so at the direction of Officer Byers and not based on personal observation. *Id*. Copies of the screening report and conduct report are normally sent back with the offender once the screening process is over. If the offender is restrained, it is Officer Byers's habit to send the papers back with the escorting officer. *Id*.

On Mr. Bowers's screening checklist in WVD 16-01-0085, Officer Byers verified Mr. Bowers's name and IDOC number and circled "no" to the question "Does the offender wish to be screened[.]" *Id*. She also did not circle an answer to seven questions that followed. Ex. 1, p. 6.

Mr. Bowers states that he never received the conduct report or screening report relating to disciplinary proceeding WVD 16-01-0085 and was never given an opportunity to sign them. Ex. 1, pp. 2-3. Mr. Bowers never received a copy of the notices of lay advocate or witness. Ex. 1, p. 4. Mr. Bowers states that he did not refuse to sign these documents.

A disciplinary hearing was held on March 15, 2017, for both WVD 16-01-0084 and WVD 16-01-0085. IDOC employees, Officers Nickoe Rucker and Donald Taylor, arrived at Mr. Bowers's cell on March 15, 2017 to escort him to the disciplinary hearing. They instructed him to cuff up and he told them he was not leaving his cell. Officers Rucker and Taylor signed the report of disciplinary hearing which stated that Mr. Bowers refused to attend the disciplinary hearing. Dkt. 3-11. A hearing was held in Mr. Bowers's absence and he was found guilty of threatening in WVD 16-01-0085. *Id*.

Officer Thompson joined Officers Rucker and Taylor on March 15, 2017, to escort Mr. Bowers to his disciplinary hearing. Mr. Bowers refused to leave his cell. Officer Thompson signed the bottom of the report of disciplinary hearing which stated that Mr. Bowers refused to attend the disciplinary hearing. *Id*. IDOC staff do not force an offender to attend a disciplinary hearing.

**C. Mr. Bowers's Petition and the Evidentiary Hearing**

In his petition, Mr. Bowers again argues that he did not receive written notice of the charges at least twenty-four hours before the disciplinary hearing. Dkt. 2. The respondent responded by introducing a Screening Report dated March 8, 2017, which states that Mr. Bowers was notified of the threatening charge but refused screening. Dkt. 3-9.

The Court issued an Entry Discussing the Need for Evidentiary Hearing or Vacation of Disciplinary Sanctions. Dkt. 7. The respondent elected to proceed with an evidentiary hearing. Mr. Bowers was appointed counsel and a hearing was held on September 20, 2018. Mr. Bowers appeared in person and by counsel, Mario Garcia and Terry Tolliver. The respondent was represented by Deputy Attorney General David Arthur. The parties submitted proposed findings of fact and conclusions of law.

## II. Conclusions of Law

In his petition, Mr. Bowers raises three grounds. Specifically, Mr. Bowers alleges: 1) a due process violation because he was never given advance written notice of the charges and was denied the opportunity to present witnesses and evidence; 2) a double jeopardy violation because he was serving two different commitments when each disciplinary hearing occurred; and 3) a due process violation because he was forced to participate in a disciplinary hearing despite not being screened and he was not permitted to present witnesses and evidence.

**A. Ground One – Due Process at Screening**

In ground one, Mr. Bowers argues that he was not given advance written notice of the charge and was not allowed to request witnesses and evidence at screening. Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45

(7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

    1. <u>Advance Written Notice</u>

Based on the evidence presented at the evidentiary hearing, the Court finds that Officer Byers did not complete the IDOC screening process or the checklist. Ex. 1, p. 6.[7] While proper completion of the IDOC checklist ensures that inmates are properly advised of their rights, completion is not necessary to comport with the protections in *Wolff*. And the *Wolff* protections are the only issues reviewable here. With respect to advance written notice, the Court finds that Mr. Bowers had advance written notice of the charges because this was the second time he received a conduct report on the same charge and his protests concerning his (mis)understanding[8] of the

---

[7] Based on Mr. Bowers's history in these (and other) disciplinary proceedings, the Court is incredulous that the IDOC did not take better care to ensure that Mr. Bowers was thoroughly screened the second time around. Even if Mr. Bowers refused to sign the conduct report or screening report, the IDOC needed to take care that the screening staff went through the disciplinary process checklist. For example, a witness **in the room** or a video recording of the screening staff person presenting the conduct report to Mr. Bowers and notifying him of his due process rights would have been helpful. While the Court concludes that Mr. Bowers did receive notice of the charges here, the IDOC managed the second disciplinary proceedings in such a way that created unnecessary work for the Court, counsel, and IDOC staff.

[8] Mr. Bowers misinterprets the previous Entry from this Court in *Bowers v. Brown*, 2:16-cv-152-JMS-MJD, dkt. 19. The Entry dismissed the petition for writ of habeas corpus that challenged the disciplinary sanctions in WVD 16-01-0085 because the respondent notified the Court that he vacated the sanctions. Mr. Bowers relied on the Court's Entry for the proposition that the IDOC was not permitted to set this matter for rehearing, but the Entry did not prevent or prohibit the IDOC from holding a rehearing based on the same report of conduct.

Court's dismissal in the earlier related action establish that he knew exactly what conduct report was at issue. Mr. Bowers previously received the exact same conduct report attached to the respondent's response in *Bowers v. Brown*, 2:16-cv-152-JMS-MJD. And the screening report and conduct reports are identical in the current proceedings and the initial proceedings.

Moreover, the Court does not find Mr. Bowers credible. He testified that on previous occasions in relation to different disciplinary proceedings he refused to sign the paperwork approximately twenty percent of the time. He has also been through the disciplinary proceeding process more than 15 times and knows that IDOC staff will be handing him papers to sign. In fact, on previous occasions, Officer Byers gave Mr. Bowers papers to sign and he requested witnesses, a lay advocate, and he was given twenty-four hours' notice of when the disciplinary hearings would be held. Mr. Bowers cannot refuse to participate in the screening process and then call foul when the process continues without him.

### 2. The Right to Present Witnesses and Evidence

A more significant concern presented by the circumstances of the failed screening is that Officer Byers did not notify Mr. Bowers of his right to present evidence and witnesses. Even this failure will not entitle Mr. Bowers to relief, as due process only requires access to witnesses and evidence that are exculpatory. *Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir. 1992). "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride,* 81 F.3d 717, 721 (7th Cir. 1996). The denial of the right to present evidence will be considered harmless, unless the prisoner shows that the evidence could have aided his defense. *See Jones v. Cross,* 637 F.3d 841, 847 (7th Cir. 2011).

Mr. Bowers has never asserted that he would have presented any exculpatory evidence but was prevented from doing so. In fact, throughout these proceedings, Mr. Bowers has never proffered what witnesses or evidence he was prevented from presenting as a result of the alleged failure to provide him with advance notice of the hearing. The Court concludes that any denial of the right to present evidence was harmless because Mr. Bowers failed to show how the evidence could have aided his defense.

Accordingly, Mr. Bowers is not entitled to relief on this ground.

### B. Ground Two – Double Jeopardy

In ground two, Mr. Bowers claims that he was subjected to a double jeopardy violation because the rehearing on the instant charge occurred when he was under a different commitment than he was under when the original disciplinary hearing took place. More specifically, he claims he was serving a sentence under Cause No. 49G06-0008-CF-149750 when the original sanctions were imposed but was serving a sentence under Cause No. 49F24-1211-FD-79190 when the sanctions were imposed at rehearing. He argues he filed a petition for restoration of good time credit but was denied because he was serving a new commitment.

Mr. Bowers's argument fails to acknowledge that the sanctions imposed from the original disciplinary conviction were vacated when the rehearing was ordered. Because all lost credit time and credit class demotions were restored prior to the rehearing, Mr. Bowers did not suffer a loss of liberty interest with respect to the initial disciplinary proceedings.

Moreover, the Seventh Circuit has long held that "disciplinary proceedings do not implicate double jeopardy concerns." *United States v. Morales,* 312 Fed. Appx. 823, 824 (7th Cir. Feb. 20, 2009) (inmate could be disciplined by prison and prosecuted by the government for same conduct); *Meeks v. McBride,* 81 F.3d 717, 722 (7th Cir. 1996) ("an acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge."). "If an acquittal in

an earlier hearing were to preclude a subsequent hearing on the same charge, the overriding interest of prison administrators to act swiftly to maintain institutional order could be compromised in the interest of developing the evidence needed to obtain a conviction." *Meeks,* 81 F.3d at 722. *See also Portee v. Vannatta,* 105 Fed.Appx. 855, 858 (7th Cir. 2004) ("double jeopardy protections do not attach in prison disciplinary proceedings."). The double jeopardy claim is denied as meritless.

**C.      Ground Three – Hearing Issues**

Finally, in ground three, Mr. Bowers claims that he was forced to attend the disciplinary hearing despite not being screened and was denied the right to present any witnesses and evidence.

1. <u>Refusal to Attend the Hearing</u>

The Court does not find Mr. Bowers credible when he claims that he initially attended the disciplinary hearing on March 15, 2017, but then asked for a break to return to his cell to obtain evidence. Three IDOC staff members testified that they arrived at Mr. Bowers's cell to escort him to the disciplinary hearing on March 15, 2017, and he refused. The Court finds these witnesses credible and that Mr. Bowers refused to attend the disciplinary hearing. Accordingly, the Court finds that Mr. Bowers waived his right to attend the disciplinary hearing when he refused to leave his cell. *See Domka v. Portage County*, 523 F.3d 776, 781 (7th Cir. 2008) (stating that "[i]t is without question that an individual may waive his procedural due process rights.").

2. <u>The Right to Present Witnesses and Evidence</u>

Mr. Bowers argues that he was denied the right to present witnesses and evidence at the hearing and this was a violation of due process. As discussed above, due process only requires access to witnesses and evidence that are exculpatory. *Rasheed–Bey,* 969 F.2d at 361. Mr. Bowers has never argued or claimed that the witnesses and evidence he was denied from presenting were

9

exculpatory. In fact, Mr. Bowers has never identified the witnesses or evidence he was denied from presenting or explained why they were exculpatory.

The Court concludes that any denial of the right to present witnesses and evidence was harmless because Mr. Bowers failed to show how the evidence could have aided his defense. Accordingly, Mr. Bowers is not entitled to relief on this ground.

### III. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Bowers to the relief he seeks.

The Court concludes that Mr. Bowers received advance written notice of the charges, did not suffer a double jeopardy violation, waived his right to attend the disciplinary hearing, and any denial of evidence or witnesses did not violate his due process rights as he has failed to demonstrate that this error was harmful. Accordingly, Mr. Bowers's petition for a writ of habeas corpus must be **denied** and the action dismissed. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 1/2/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
katherine.cornelius@atg.in.gov

Mario Garcia
BRATTAIN MINNIX GARCIA
mario@bmgindy.com

Terry Wayne Tolliver
BRATTAIN MINNIX GARCIA
terry@brattainminnix.com